**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED TO PROTECT DEMOCRACY, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al.*,<br><br>    Defendants. | Civil Action No. 1:17-cv-2016 (RC) |

**REPLY MEMORANDUM IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT…………............................................................................................... 3

I.      PLAINTIFFS LACK STANDING ................................................................................3

   A.  Plaintiffs Have Not Been Deprived of Information That Must Be Publicaly
       Disclosed; Rather; the Paperwork Reduction Act is a Routine Notice-and-
       Comment Statute That Does Not Support Informational Standing. ............................4

   B.  Plaintiffs Have Not Suffred the Type of Harm Congress Sought to Prevent by
       Requring Disclosure.....................................................................................................8

   C.  Plaintiffs Lack Standing To  Seek the Broad Injunctive Relief They Request. ..........11

II.     THE COMMISSION IS NOT AN AGENCY .................................................................12

   A.  Plaintiffs' Novel Argument That the Substantial Independent Authority
       Requirement Does Not Apply in Construing the Term "Executive Office of the
       President" Should be Rejected.....................................................................................13

   B.  The FOIA and Paperwork Reduction Act Definitions of "Agency" Should be
       Interpreted Identically.................................................................................................16

III.    MANDAMUS IS UNAVAILABLE TO PLAINTIFFS ...................................................20

IV.     PLAINTIFFS' DERIVATIVE CLAIMS AGAINST OMB FAIL ...................................21

CONCLUSION.....................................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Alexander v. FBI*,
    691 F. Supp. 2d 182 (D.D.C. 2010) ...................................................................... 19

*Anglers Conserv. Network v. Pritzker*,
    809 F.3d 664, 670 (D.C. Cir. 2016) ..................................................................... 23

*Armstrong v. Executive Office of the President*,
    90 F.3d 553 (D.C. Cir. 1996) ............................................................................... 15

*Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*,
    539 F. Supp. 2d 4 (D.D.C. 2008) ........................................................................... 3

*Baptist Med. Ctr. v. Sebelius*,
    603 F.3d 57 (D.C. Cir. 2010) ............................................................................... 20

*Bensman v. U.S. Forest Serv.*,
    408 F.3d 945 (7th Cir. 2005) .................................................................................. 9

*Bragdon v. Abbott*,
    524 U.S. 624 (1998) ............................................................................................. 17

*Califano v. Yamaski*,
    442 U.S. 682 (1979) ....................................................................................... 11, 12

*Cary v. Hall*,
    No. C05-4363 VRW, 2006 WL 6198320 (N.D. Cal. Sept. 30, 2006) ...................... 5

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*,
    78 F. Supp. 3d. 208 (D.D.C. 2015) ........................................................................ 7

*Citizens for Responsibility & Ethics in Wash.  v. Office of Admin.*,
    566 F.3d 219, 222-23 (D.C. Cir.  2009) ................................................................ 13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ............................................................................................. 11

*Dole v. United Steelworkers of Am.*,
    494 U.S. 26 (1990) ................................................................................................. 9

*\*Dong v. Smithsonian Inst.*,
    125 F.3d 877 (D.C. Cir. 1997) .................................................................. 16, 17, 18

*Energy Research Found. v. Defense Nuclear Facilities Safety Bd.*,
    917 F.2d 581 (D.C. Cir. 1990) .................................................................. 16, 17, 18

*Elec. Privacy Info Ctr. v. Presidential Advisory Commission on Election Integrity,
   No. 17-cv-1320 (CKK), 2017 WL 3141907 (D.D.C. July 24, 2017) ................................ 12, 21

Fed. Election Comm'n v. Akins,
   524 U.S. 11 (1998) .................................................................................................... 10

Fla. Audubon Soc'y v. Bentsen,
   94 F.3d 658 (D.C. Cir. 1996) (en banc) ................................................................. 7

Fogerty v. Fantasy, Inc.,
   510 U.S. 517 (1994) .................................................................................................. 19

Friends of Animals v. Jewell,
   828 F.3d 989 (D.C. Cir. 2016) ................................................................................. 3

Friends of Animals v. Salazar,
   626 F. Supp. 2d 102 (D.D.C. 2009) ..................................................................... 5, 6

Heartwood, Inc. v. U.S. Forest Serv.,
   431 F. Supp. 2d 28 (D.D.C. 2006) ......................................................................... 12

*In re al-Nashiri,
   791 F.3d 71, 86 (D.C. Cir. 2015) ........................................................................... 21

In re Sealed Case,
   121 F.3d 729 (D.C. Cir. 1997) ................................................................................ 20

*Int'l Bhd. of Teamsters v. TSA,
   429 F.3d 1130 (D.C. Cir. 2005) .......................................................................... 7, 10

Jory v. Sec'y, U.S. Dep't of Homeland Sec.,
   859 F. Supp. 2d 72 (D.D.C. 2012) ......................................................................... 12

Kingdomware Techs., Inc. v. United States,
   136 S. Ct. 1969 (2016) ............................................................................................ 23

Kissinger v. Reporters Committee for Freedom of the Press,
   445 U.S. 136 (1980) .................................................................................................. 14

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
   547 U.S. 71 (2006) ....................................................................................... 13, 17, 19

Meyer v. Bush,
   981 F.2d 1288 (D.C. Cir 1993) ......................................................................... 15, 17, 18

N. States Power Co. v. U.S. Dep't of Energy,
   128 F.3d 754 (D.C. Cir. 1997) ............................................................................... 20

*Nader v. Fed. Election Comm'n*,
  725 F.3d 226 (D.C. Cir. 2013) ........................................................................ 3, 11

*Pub. Citizens v. U.S. Dep't of Justice*,
  491 U.S. 440 (1989) .............................................................................................. 10

*Rowe v. N.H. Motor Transport Ass'n*,
  552 U.S. 364 (2008) .............................................................................................. 19

*Rushforth v. Council of Economic Advisers*,
  762 F.2d 1038 (D.C. Cir. 1985) .................................................................... 15, 16

*Scenic Am. v. U.S. Dep't of Transp.*,
  983 F. Supp. 2d 170 (D.D.C. 2013) ...................................................................... 7

*Soucie v. David*,
  448 F.2d 1067 (D.C. Cir. 1971) ................................................................... 13, 15

*Spokeo, Inc. v. Robbins*,
  136 S. Ct. 1540 (2016) ....................................................................................... 7, 8

*\*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) ................................................................................... 3, 6, 10

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ............................................................................ 21

*Sweetland v. Walters*,
  60 F.3d 852 (D.C. Cir. 1995) ................................................................... 13, 15, 16

*United States v. AVX Corp.*,
  962 F.2d 108 (1st Cir. 1992) .................................................................................. 7

*United States v. Haynes*,
  555 U.S. 415 (2009) .............................................................................................. 19

*United States v. Phillip Morris USA, Inc.*,
  396 F.3d 1190 (D.C. Cir. 2005) ............................................................................ 12

*Wilderness Soc., Inc. v. Reye*,
  622 F.3d 1251 (9th Cir. 2010) ................................................................................ 7

## Statutes

5 U.S.C. § 551 ......................................................................................... passim

5 U.S.C. § 552 ......................................................................................... passim

5 U.S.C. § 553 ................................................................................................................. 6

16 U.S.C. § 1539(c) .......................................................................................................... 5

44 U.S.C. § 3501 ......................................................................................................... 9, 10

44 U.S.C. § 3502 .................................................................................................. 13, 17, 20

44 U.S.C. § 3506 ............................................................................................................ 4, 5

44 U.S.C. § 3507 ............................................................................................................... 6

44 U.S.C. § 3517 .................................................................................................. 21, 22, 23

**Regulations**

5 C.F.R. § 1302.3 ............................................................................................................ 23

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ..........................................................................22

H.R. Rep. No. 93-1380 (1974) ........................................................................................ 15

H.R. Rep. No. 93-1389 (1974) ........................................................................................ 15

## INTRODUCTION

Plaintiffs have brought suit against the Presidential Advisory Commission on Election Integrity (the "Commission") and the Office of Management and Budget ("OMB").  They argue that the Commission's request that states voluntarily provide voter registration information that they already make available to the public under their own laws violates the Paperwork Reduction Act, and that OMB's refusal to block that request violated the Administrative Procedure Act ("APA").  As set out in further detail in defendants' motion to dismiss, this Court lacks jurisdiction over this complaint, which, in any event, does not state a claim.

As a threshold matter, this Court lacks jurisdiction because plaintiffs have failed to establish informational standing, the sole purported basis for their purported injury-in-fact.  To meet that stringent standard, plaintiffs must show that they have been deprived of information that a statute requires the government to disclose, and by being denied that information, they have suffered the type of harm Congress sought to prevent.  The Paperwork Reduction Act is not that type of statute; rather, it is a statutory scheme designed to improve government operations, and while it includes a notice-and-comment requirement (akin to many other statutes, such as the APA), the purported violation of those procedures, without more, does not create a basis for standing.  Indeed, were it otherwise, a plaintiff would have informational standing anytime that an agency failed to issue a notice, a conclusion impossible to square with the Supreme Court's and D.C. Circuit's standing doctrine.  And while plaintiffs attempt to minimize that doctrine in their opposition, the conclusion that a procedural injury, without more, cannot constitute a concrete and particularized injury-in-fact remains very much alive.  Nor, in any event, have plaintiffs suffered the type of injury Congress intended to prevent by enacting the Paperwork Reduction Act.  Plaintiffs complain of injury to their advocacy interests (though, tellingly, they

do not bring a claim of organizational injury).  But the Paperwork Reduction Act was intended to promote efficient government decisionmaking, it is not a disclosure statute intended to reveal information to the general public.  Moreover, even if plaintiffs have informational standing to seek the disclosure of specific information, they do not have standing to seek an injunction requiring the Commission to cease collecting information and to destroy information already collected; indeed, they never argue that such collection has caused them any injury.  Plaintiffs' general reference to the Court's "equitable jurisdiction" does not suffice to overcome the well-established principle that they must have standing for each form of relief they seek.

Even if this Court concludes it has standing, plaintiffs' claims fail on the merits.  The Commission is not an agency subject to the Paperwork Reduction Act.  For decades, this Circuit has interpreted the Freedom of Information Act's definition of "agency," which is substantively identical to that of the Paperwork Reduction Act, to exclude entities within the Executive Office of the President that, like the Commission, do not exercise substantial independent authority. Plaintiffs never claim that the Commission exercises such authority, but instead put forward a novel statutory argument, contradicted by this Circuit's case law, in favor of their proposition that these substantively identical definitions should be interpreted differently.  Moreover, because plaintiffs have brought only a mandamus claim, the Commission's obligation to comply with the Paperwork Reduction Act must be "clear," and plaintiffs have not shown that it is. Finally, plaintiffs' derivative claims against OMB, which also depend on the theory that the Commission is an agency, similarly fail.

Accordingly, this complaint should be dismissed.

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING

Plaintiffs confirm in their opposition that they rest their claim to standing exclusively on the theory that they have informational standing.  *See* Mem. of Law in Supp. Pls.' Opp'n to Defs.' Mot. to Dismiss & Reply Mem. in Further Supp. of Pls.' Mot. Prelim. Inj. ("Opp'n"), at 3-17, ECF No. 25.  But, as explained in defendants' opening brief, informational standing is a narrow theory of standing that "arises only in very specific statutory contexts," *Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*, 539 F. Supp. 2d 4, 15 (D.D.C. 2008) (citation omitted), *aff'd* 358 F. App'x 179 (D.C. Cir. 2009), where a plaintiff establishes that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure."  *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016); *see also Nader v. Fed. Election Comm'n*, 725 F.3d 226, 229 (D.C. Cir. 2013) ("It is not enough, however, to assert that disclosure is required by law.  Only if the statute grants a plaintiff a concrete interest in the information sought will he be able to assert an injury in fact.").

Contrary to plaintiffs' claims, the Paperwork Reduction Act is not a statute that vests plaintiffs with concrete interests in the information they seek.  Rather, it is an ordinary type of notice-and-comment procedural provision whose violation, without more – and there is not more – does not create Article III injury-in-fact.  Thus, plaintiffs fail at both prongs of the informational standing inquiry.  First, the Paperwork Reduction Act does not require the disclosure of specific information, except through a routine notice-and-comment process, a violation of which (if there was one), pursuant to the Supreme Court's decision in *Summers v.*

*Earth Island Institute*, 555 U.S. 488 (2009), does not itself constitute injury-in-fact sufficient to confer standing.  Second, even if disclosure was required, plaintiffs have not suffered the type of harm Congress sought to prevent.  The Paperwork Reduction Act is primarily focused on improving government operations; it is not a disclosure statute.  Plaintiffs' generalized interest in fostering discourse about the propriety of government action is not a basis for informational standing here.  Indeed, were that so, public interest groups would *always* have standing to sue in the context of procedural violations related to notice-and-comment, a conclusion impossible to square with the Supreme Court's precedent in *Summers* and other procedural injury cases.

A.      **Plaintiffs Have Not Been Deprived of Information That Must Be Publicly Disclosed; Rather, the Paperwork Reduction Act is a Routine Notice-and-Comment Statute That Does Not Support Informational Standing**

Plaintiffs have not been deprived of information that must be publically disclosed to them pursuant to the Paperwork Reduction Act in such a manner that supports informational standing.  Rather, the Paperwork Reduction Act is a notice-and-comment scheme similar to many others throughout the federal government.  The failure to comply with these notice requirements does not cause an informational injury sufficient for informational standing, rather, it represents a form of procedural injury that is not, by itself, sufficient for standing.

To begin, the Paperwork Reduction Act creates a notice-and-comment scheme; it does not require the mandatory disclosure of particular information in a manner that creates informational standing.  In an effort to identify mandatory disclosure, plaintiffs first rely on 44 U.S.C. § 3506(c), which sets out certain requirements that agencies (which the Commission is not) must comply with.  Subsection 3506(c)(1) sets out an internal review process with which an agency must comply, which includes the review and evaluation of proposed information collections.  44 U.S.C. § 3506(c)(1).  Critically, however, this provision does not mandate any

*disclosure* of that information, and, indeed, plaintiffs never actually argue that it does.  *See*

Opp'n at 4.

Next, subsection 3506(c)(2)(A) requires that the agency "solicit comment" on the

collection.  44 U.S.C. § 3506(c)(2)(A).  But while this provision requires the solicitation of

comment, it does not actually mandate the disclosure of any particular piece of information,

though it does highlight four topics on which the agency should solicit comment.[1]  *See id.*

Although plaintiffs argue that "[s]ection 3506(c)(2) requires the Commission, at a minimum, to

publically disclose the information necessary for 'members of the public' to provide comment on

the four objections listed in that section," Opp'n at 5, the statute itself does not actually impose

such a requirement.  Similarly, while plaintiffs assert that "§ 3506(c)(1) indicates what materials

an agency must create as part of an assessment of those same questions," *id.*, their conclusion,

that "the statute is naturally read to require the agency to publicly disclose" those materials does

not follow from the actual text of the statute, which does not impose such requirements.

Finally, subsection 3506(c)(3) requires the agency to "certify" certain information for the

OMB Director for his or her review.  44 U.S.C. § 3506(c)(3).  Again, however, this provision

does not require disclosure, *id.*, and, again, plaintiffs do not claim it does.  *See* Opp'n at 5-6.  In

essence, then, section 3506(c) requires notice before an agency may collect information,

---

[1] In this respect, section 3506(c)(2)(A) is distinct from other statutes that do require the explicit disclosure of specific information.  For example, section 10(c) of the Endangered Species Act, 16 U.S.C. § 1539(c), requires that all information received as part of an application for a permit or an exemption under the Endangered Species Act must be made public, and courts have held that this disclosure provision may form a basis for informational standing.  *See Friends of Animals v. Salazar*, 626 F. Supp. 2d 102, 111-112 (D.D.C. 2009) (citing *Cary v. Hall*, No. C 05-4363 VRW, 2006 WL 6198320, at *9-11 (N.D. Cal. Sept. 30, 2006)).  Section 3506(c)(2) of the Paperwork Reduction Act, by contrast, does not require a comparable disclosure, but instead requires that the agency solicit comment.

comparable to the notice of proposed rulemaking requirement of the APA.  *See* 5 U.S.C. § 553(b).

After the agency completes its review, section 3507(a)(1)(D) of the Paperwork Reduction Act, 44 U.S.C. § 3507(a)(1)(D), does require that an agency publish a notice, which must contain certain information, in the Federal Register before it may conduct or sponsor the collection of information.  (Plaintiffs say that this notice must contain the information required to be gathered in subsection 3506(c)(1), *see* Opp'n at 6, but offer no basis for that conclusion, and, indeed, both sections discuss different pieces of information.)  This is comparable to the post-comment publication requirement set out in sections (c) and (d) of the APA.  *See* 5 U.S.C. §§ 553(c), (d).  Furthermore, publication requirements that fall at the *conclusion* of an internal agency review process, like those in section 3507, do not form a basis for an informational injury claim.  *See Friends of Animals v. Salazar*, 626 F. Supp. 2d 102, 113 (D.D.C. 2009).  Instead, they "reveal[] a more general interest in the law being followed" not sufficient for standing.  *Id.*

Looking at these Paperwork Reduction Act provisions in context, then, they constitute a scheme similar to notice-and-comment schemes common throughout the federal government:  a government agency must disclose that it is considering an action, and then, once it has taken that action, it must publicize that action.  The failure to comply with these notice requirements does not cause an informational injury sufficient for informational standing; rather, it represents a form of procedural injury that is not, by itself, sufficient for standing.  As the Supreme Court has held, "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing."  *Summers*, 555 U.S. at 496.  This includes the failure to follow notice-and-comment rulemaking procedures, even if that failure allegedly deprived the plaintiff "of an opportunity to influence

public policy," like plaintiffs allege here. *Scenic Am. v. U.S. Dep't of Transp.*, 983 F. Supp. 2d 170, 176 (D.D.C. 2013); *see also Int'l Bhd. of Teamsters v. TSA*, 429 F.3d 1130, 1135 (D.C. Cir. 2005) (deprivation of right to participate in notice-and-comment rulemaking does not, in and of itself, establish Article III standing); *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, 78 F. Supp. 3d, 208, 237-38 (D.D.C. 2015) ("[P]laintiffs cannot transform an agency's violation of the general public right to comment into injury in fact simply by stating that they, like the rest of the public, were denied the opportunity[.]").  Instead, plaintiffs must allege that the procedural failure caused the plaintiff "personal and particularized injury." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc).

In response, plaintiffs state that their injury is "rooted in [their] ability to carry out [their] core missions of educating the public and engaging in advocacy." Opp'n at 10.  Courts, however, have repeatedly rejected the attempt to characterize procedural injuries in terms of an injury to the organization's mission, or even to its general ability to influence public policy. *See Scenic Am.*, 983 F. Supp. 2d at 176; *Chesapeake Climate Action Network*, 78 F. Supp. 3d at 237-38; *see also Int'l Bhd. of Teamsters*, 429 F.3d at 1135 ("[T]he 'mere inability to comment effectively or fully, in and of itself, does not establish an actual injury.'") (quoting *United States v. AVX Corp.*, 962 F.2d 108, 119 (1st Cir. 1992)).  Nor, as stated in defendants' opening brief, can plaintiffs "reframe[] every procedural deprivation in terms of informational loss." *Wilderness Soc., Inc. v. Reye*, 622 F.3d 1251, 1260 (9th Cir. 2010)).[2]  Indeed, were the fact that

---

[2] Plaintiffs criticize defendants for relying on *Wilderness Society*, *see* Opp'n at 12 n.2, for its conclusion that "[the] deprivation of procedural rights, alone, cannot confer Article III standing." *Wilderness Soc.*, 622 F.3d at 1251.  They state that this conclusion was overruled by the Supreme Court in *Spokeo, Inc. v. Robbins*, 132 S. Ct. 1540 (2016).  As discussed below, however, *Spokeo* reaffirmed, rather than overruled, the conclusion that a bare violation of procedural rights, absent more, is sufficient for Article III standing. *Spokeo*, 126 S. Ct. at 1549.

an agency's failure to engage in notice and comment practices sufficient for standing simply because the plaintiff was an advocacy organization, *Summers* – which was brought by such organizations – would have come out differently.

In response, plaintiffs state that the "Supreme Court clarified the limits of the *Summers* holding two terms ago in *Spokeo, Inc. v. Robins*, 132 S. Ct. 1540 (2016)."  Opp'n at 11.  As plaintiffs correctly note, *Spokeo* stated that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," 126 S. Ct. at 1549, and, as plaintiffs also note, the Court referenced two informational standing cases.  *Id.* at 1549-50.  But in the next breath, it also confirmed that a "bare procedural violation" absent concrete and particularized harm is not enough.  *Id.* at 1549.  Furthermore, the Supreme Court held that the Ninth Circuit had erred in crediting the plaintiffs' claim of procedural injury without requiring a showing of concreteness.  *See id.* at 1549-50.  In other words, it is far from clear that *Spokeo* changed the informational standing landscape, and there is certainly no indication that it intended to abrogate *Summers*' "bare procedural violation" proscription on Article III standing; to the contrary, it reaffirmed that requirement.

**B.     Plaintiffs Have Not Suffered the Type of Harm Congress Sought to Prevent by Requiring Disclosure**

Even if this Court holds that the Paperwork Reduction Act requires particular information to be disclosed, plaintiffs have not suffered the type of harm that Congress sought to prevent by requiring disclosure.  The Act is a statute designed to promote efficient government operations, not to promote disclosure in a way contemplated by the statutes that have been found sufficient to justify informational standing.

"The Paperwork Reduction Act was enacted in response to one of the less auspicious aspects of the enormous growth of our federal bureaucracy:  its seemingly insatiable appetite for

8

data." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32 (1990).  It is intended to "minimize

the paperwork burden . . . [on] persons resulting from the collection of information" by federal

agencies.  44 U.S.C. § 3501(1).  It is also intended to "maximize the utility," *id.* § 3501(2),

"improve the quality," *id.* § 3501(4), and "minimize the cost," *id.* § 3501(5), of information used

by federal agencies, and to minimize the burden of information collections, *id.* § 3501(6).

Congress also intended the Act to ensure that the collection of information comports with quality

and legal standards.  *Id.* §§ 3501(8)-(11).  While there are public disclosure elements of the

Paperwork Reduction Act, similar to many other statutory schemes that have notice-and-

comment requirements, the purpose of the statute is not to "provid[e] information to the public,"

but rather to improve the effectiveness of information collection.  *See Bensman v. U.S. Forest

Serv.*, 408 F.3d 945, 958 (7th Cir. 2005) (discussing statutory purposes as they relate to

informational standing).

 Plaintiffs complain that defendants' view of the Paperwork Reduction Act is "artificially

thin," but it is not.  Plaintiffs point to two provisions of the Act's purposes section.  First, they

note that subsection four states that the Act is intended to "improve the quality and use of

Federal information to strengthen decisionmaking, accountability, and openness in Government

and society."  44 U.S.C. § 3501(4); *see* Opp'n at 12.  But, by its terms, this provision highlights

the fact that government agencies should *use* quality information in their decisionmaking; it says

nothing at all about disclosure of *procedural* information about the collection that information to

the public.  Nor does subsection eleven, which states that the Act is intended to "improve the

responsibility and accountability of the Office of Management and Budget and all other Federal

agencies to Congress and to the public for implementing the information collection review

process, information resources management, and related policies and guidelines under this

subchapter." 44 U.S.C. § 3501(11); *see* Opp'n at 12.  This subsection is about ensuring that agencies comply with the Act's requirements, it is not a provision evincing general public disclosure as a statutory purpose.

Indeed, comparing the Paperwork Reduction Act to other statutes that courts have found sufficient for informational standing illustrates the different purposes of disclosure between statutes that provide for informational standing and those, like the Act, that do not.  The Federal Election Campaign Act, for example, was designed to disclose information about political contributors and nondisclosure was the type of injury that Act was designed to remedy.  *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998).  And the Federal Advisory Committee Act was designed to allow members of the public to scrutinize the activities of advisory committees, and, therefore, failure to comply with its informational disclosure provisions could create a cognizable injury in fact.  *See Pub. Citizens v. U.S. Dep't of Justice*, 491 U.S. 440, 459-50 (1989).  Plaintiffs point to these cases, *see* Opp'n at 15-16, but fail to show how the Paperwork Reduction Act shares those statutes' focus on disclosure.  The Paperwork Reduction Act does not; instead, it uses public notice and comment as a mechanism for improving government operations, a common element which, if sufficient for informational standing, would mean that anyone would have standing to challenge a government entity's failure to comply with notice and comment provisions – a conclusion impossible to square with precedent.  *See Summers*, 555 U.S. at 496; *Int'l Bhd of Teamsters*, 429 F.3d at 1135.

Nor, in any event, does plaintiffs' purported injury constitute the type of harm that Congress intended to prevent through the Paperwork Reduction Act's disclosure provisions. Plaintiffs' claim that their mission is to "educate the public and pursue advocacy," Opp'n at 13, and, by acquiring the information they claim they are entitled to under the Act, they would have

been able to lobby state officials about whether to comply with the Commission's request for information, *id.* at 13-14.  But the Paperwork Reduction's Act disclosure provisions are intended to ensure that the information the government seeks is necessary to government agency operations; it is not intended to inform third parties about whether they should comply with voluntary collections.  Nor is it about providing general information to advocacy groups.  *Cf. Scenic Am.*, 983 F.2d at 176-77 (inability to participate in notice and comment process is not sufficient, standing alone, for injury-in-fact).  In essence, plaintiffs assert they have a generalized interest in ensuring that the Commission follows the law, as they construe the law.  But this general interest is not sufficient to confer informational standing.  *See Nader*, 725 F.3d at 230.

### C.      Plaintiffs Lack Standing To Seek the Broad Injunctive Relief They Request

Finally, as stated in defendants' opening brief, even assuming that plaintiffs have informational standing based on a failure to make specific Federal Register disclosures, because "a plaintiff must demonstrate standing separately for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted), plaintiffs can only seek relief that would remedy that particular injury, *i.e.*, they can only require the disclosure of that information to which they claim an entitlement.  Mem. Supp. Defs.' Opp'n to Pls.' Mot. Prelim. Inj. & Defs.' Mot. Dismiss ("MTD"), at 15, ECF No. 22.  They lack standing to seek a broad injunction requiring the Commission to cease collecting information and to destroy the information already collected, because they do not allege that they have been injured by the *collection* of information.  *Id.*

Plaintiffs respond by stating that "courts have broad equitable power to grant 'complete relief' to plaintiffs," citing *Califano v. Yamaski*, 442 U.S. 682, 702 (1979).  Opp'n at 17.  But *Califano* does not stand for the broad proposition that plaintiffs ascribe to it.  Instead, *Califano*

referenced "complete relief" in the context of an argument by the defendant that nationwide class relief under Federal Rule of Civil Procedure 23 was not necessary to provide complete relief to the plaintiff.  442 U.S. at. at 702.  Indeed, the D.C. Circuit has since concluded that courts "may only assume broad equitable powers when the statutory or Constitutional grant of power is equally broad."  *United States v. Phillip Morris USA, Inc.*, 396 F.3d 1190, 1197 (D.C. Cir. 2005). Here, plaintiffs make no attempt to show the existence of a broad grant of equitable power, and indeed, mandamus, their sole basis for jurisdiction, is an "exceedingly narrow" basis of jurisdiction.  *Jory v. Sec'y, U.S. Dep't of Homeland Sec.*, 859 F. Supp. 2d 72, 75 (D.D.C. 2012). Accordingly, they lack standing to prevent the collection of information or to require the destruction of information already collected.

## II.     THE COMMISSION IS NOT AN AGENCY

As explained in defendants' opening brief, the Commission is not an "agency" for purposes of the Paperwork Reduction Act because entities within the Executive Office of the President ("EOP"), such as the Commission, are "agencies" only if they exercise substantial independent authority.  *See* MTD at 17-25.  The Commission does not exercise such authority, *see Electronic Privacy Information Center ("EPIC") v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-1320 (CKK), 2017 WL 3141907, at *11 (D.D.C. July 24, 2017) *appeal docketed*, No. 17-5171 (*appeal argued* Nov. 21, 2017), and indeed, plaintiffs never claim in their opposition brief that it does.  Nor do they ever respond to the argument that an entity cannot be both an advisory committee (as plaintiffs claim the Commission is) and an agency. MTD at 24 (citing *Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 36 (D.D.C. 2006)). Instead, plaintiffs launch a convoluted statutory argument in an attempt to show that long-settled judicial construction of the Freedom of Information Act's ("FOIA's") definition of agency,

which is materially identical to that of the Paperwork Reduction Act, does not apply to the

Paperwork Reduction Act.  This argument cannot be squared with this Circuit's precedent, and

should be rejected.

> **A.    Plaintiffs' Novel Argument That the Substantial Independent Authority Requirement Does Not Apply in Construing the Term "Executive Office of the President" Should Be Rejected**

For the past forty-five years, the D.C. Circuit, following the Supreme Court's lead, has

held that entities within the EOP that do not "wield[] substantial authority independently of the

President" are not "agencies" within the definition of the FOIA (or, for that matter, the APA).

*Citizens for Responsibility & Ethics in Wash.* ("*CREW*") *v. Office of Admin.*, 566 F.3d 219, 222-

23 (quoting *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995)) (FOIA); *Soucie v. David*,

448 F.2d 1067, 1073-75 (D.C. Cir. 1971) (APA); *see also* MTD at 17-21.  As set out in

defendants' opening brief, the Paperwork Reduction Act shares a materially identical definition

with the FOIA,[3] and under well-established principles of judicial interpretation, these two

definitions should be interpreted identically.  *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith*

*Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (alterations and citations omitted) ("[W]hen judicial

interpretations have settled the meaning of an existing statutory provision, repetition of the same

language in a new statute indicates, as a general matter, the intent to incorporate its judicial

interpretations as well."); MTD at 21-22.

---

[3] *Compare* 44 U.S.C. § 3502(1) ("the term 'agency' means any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency, but does not include [certain entities not relevant here]"), *with* 5 U.S.C. § 552(f) ("'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency").

Plaintiffs oppose the straightforward analysis that materially identical definitions of "agency" should be interpreted in the same way, and instead construct a novel statutory argument that runs counter to how this Circuit has interpreted "agency" pursuant to the FOIA definition.  First, they claim that "[t]he definition of 'agency' in FOIA has two component parts." Opp'n at 19.  It includes both the APA definition set out in 5 U.S.C. § 551(1) and the definition, which explicitly mentions the EOP, found in 5 U.S.C. § 552(f)(1).  *Id.* at 19-20 ("Thus, § 551(1) is the first discrete component of FOIA's definition of 'agency,' and § 552(f) is the second."). Second, plaintiffs assert that "[t]he [Paperwork Reduction Act's] definition of 'agency' shares language only with the *second component* of that definition, outlined in § 552(f).  But the FOIA and APA exemption for units in the Executive Offices that 'advise and assist' the President derives solely from the *first component* of the FOIA definition codified at § 551(1), which the [Paperwork Reduction Act] does not adopt and with which it shares no language."  Opp'n at 20.

The essential premise in plaintiffs' remarkable argument – that the D.C. Circuit's long-established holding that EOP entities that do not wield substantial authority independently of the President does not derive from an interpretation of the term "Executive Office of the President," as set out in 5 U.S.C. § 552(f) – is simply wrong.  In *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), the Supreme Court recognized that the "[t]he FOIA does render the 'Executive Office of the President' an agency subject to the Act."  *Id.* at 156 (citing 5 U.S.C. § 552(e) (now 5 U.S.C. § 552(f)(1)).  But, the Court concluded, "[t]he legislative history is unambiguous . . .  in explaining that the 'Executive Office' does not include the Office of the President."  *Id.* at 138.  The Court, therefore, was *not* interpreting 5 U.S.C. § 551(1), but rather the definition of "Executive Office of the President" now set out in 5 U.S.C. § 552(f)(1) – a definition materially indistinguishable from the Paperwork Reduction Act's definition.

Subsequent decisions from the D.C. Circuit have made clear that the substantial independent authority limitation constitutes an interpretation of the term "Executive Office of the President." In *Rushforth v. Council of Economic Advisers*, 762 F.2d 1038, 1040 (D.C. Cir. 1985), the court quoted a Conference Report that said: "[W]ith respect to the meaning of the term 'Executive Office of the President' the conferees intend the result reached in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971). The term is not to be interpreted as included the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." *Id.* at 1040 (quoting H.R. Rep. No. 93-1380, at 15 (1974) (Conf. Rep.)). The Court went on to conclude that "the Conference Report speaks to the precise issue of the meaning of the phrase "Executive Office of the President" and specifically states an intent to follow the result in *Soucie* . . . ." *Id.* at 1040. In other words, the court was construing the term "Executive Office of the President" found in the FOIA definition; it was not interpreting section 551(1). Other D.C. Circuit decisions have similarly concluded that they are interpreting the FOIA definition's reference to "Executive Office of the President." *See, e.g.*, *Armstrong v. Executive Office of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996) (concluding that the expanded FOIA definition, which explicitly referenced the EOP, "was not, however, meant to cover 'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President.'") (quoting, first, 5 U.S.C. § 552(f), and, second, H.R. Rep. No. 93-1389, at 15); *Sweetland*, 60 F.3d at 853-54 (interpreting "Executive Office of the President" in 5 U.S.C. § 552(f) to exclude entities that do not "wield[] substantial authority independently of the President"); *Meyer v. Bush*, 981 F.2d 1288, 1291-92 (D.C. Cir 1993) (same). Accordingly, plaintiff's claim that the substantial independent authority test

derives only from the definition found in section 551(1), and not also from the definition of

"Executive Office of the President" found in section 552(f), is incorrect and should be rejected.[4]

**B.     The FOIA and Paperwork Reduction Act Definitions of "Agency"
         Should Be Interpreted Identically**

The FOIA and Paperwork Reduction Act definitions of "agency" are materially identical.

Indeed, the D.C. Circuit has repeatedly referred to the "operative statutory" definition of agency

in the FOIA to exclude the reference to 5 U.S.C. § 551(1).  *See Rushforth*, 762 F.2d at 1040

("The operative statutory provision [of FOIA] sets forth the following definition of that term:

'For purposes of this section, the term agency . . . includes any executive department, military

department, Government corporation, Government controlled corporation, or other establishment

in the executive branch of the Government (including the Executive Office of the President), or

any independent regulatory agency.'") (ellipses in original); *Sweetland*, 60 F.3d at 853 ("As

amended in 1974, FOIA provides: 'For the purposes of this section, the term 'agency' . . .

includes any executive department, military department, Government corporation, Government

controlled corporation, or other establishment in the executive branch of the Government

(*including the Executive Office of the President*), or any other independent regulatory agency.")

(ellipses and emphasis in original).  *See also Energy Research Found. v. Defense Nuclear*

*Facilities Safety Bd.*, 917 F.2d 581, 582-83 (D.C. Cir. 1990) (referencing 5 U.S.C. § 551(1) in

FOIA definition of "agency," but then stating that Congress "expanded FOIA's definition of

agency" to include the Executive Office of the President, and further concluding that not all

---

[4] This is not to say that the APA's definition of agency does not also include the substantial independent authority limitation – it does.  *See, e.g.*, *Dong v. Smithsonian Inst.*, 125 F.3d 877, 878-79 (D.C. Cir. 1997)).  But that limitation applies both to the APA's definition *and* to the definition of "Executive Office of the President" (and therefore the definition of agency) found in 5 U.S.C. § 552(f)(1).

entities in the EOP are "agencies" under the FOIA, without reference to section 551(1)).[5]  The only remaining differences, then, are the fact that the Paperwork Reduction Act says that agency "means" any executive department, etc., 44 U.S.C. § 3502(1), while FOIA says that agency "includes" any executive department, etc., 5 U.S.C. § 552(f).  These differences are not material, and plaintiffs never state otherwise.

Given these materially indistinguishable definitions, as well as the fact that FOIA's definition of "agency" had been settled since before the Paperwork Reduction Act's definition took effect, this Court should follow the well-established statutory interpretation technique instructing that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well."  *Merrill Lynch*, 547 U.S. at 85; *see also Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) (same).  Plaintiffs advance four arguments for why this rule should not apply here.  None succeed.

First, plaintiffs posit that, "when interpreting FOIA's definition of 'agency,' courts must reconcile and coherently integrate the meanings of both § 551(1) and § 552(f)."  Opp'n at 22.  They then propose that, "[t]o the extent that the language of § 552(f) could be understood to be limited to 'authorities' of the government that exercise independent power rather than those that

---

[5] To be sure, not all D.C. Circuit decisions have read out the section 551(1) component.  In *Dong v. Smithsonian Inst.*, 125 F.3d 877, 879 (D.C. Cir. 1997), the court stated that "to be an agency under the Privacy Act, an entity must fit into one of the categories set forth *either* in § 552(f) or § 551(1)."  This can be reconciled by the fact that the D.C. Circuit has also held that the FOIA definition set out in section 552(f) was intended to broaden the definition of agency, not to limit it.  *See Meyer*, 981 F.2d at 1298 (Wald, J., dissenting); *Energy Research Found.*, 917 F.2d at 584.  Accordingly, at least with respect to "establishment[s] within the executive branch of the Government," the broader, FOIA definition would control, and the narrower section 551(1) definition would be rendered redundant – which explains why courts generally do not bother to construe it for executive branch entities.

'advise and assist' alone, that limitation stems from a need to make § 552(f) consistent with § 551(1)." *Id.* That need for consistency, plaintiffs say, does not apply to the Paperwork Reduction Act, which contains no references to "authorities." *Id.* This argument fails for two reasons. First, plaintiffs' argument is contradicted by D.C. Circuit precedent. In *Dong v. Smithsonian Institute*, 125 F.3d 877 (D.C. Cir. 1997), the court stated that, "to be an agency under the Privacy Act, an entity must fit into one of the categories set forth *either* in § 552(f) or § 551(1)." *Id.* at 879 (emphasis added). This language indicates that, to the extent the section 551(1) definition has independent purchase, a government entity must only satisfy *one* of the two statutory definitions to constitute an agency, not both of them. Accordingly, there would be no need to limit the construction of section 552(f) to be consistent with section 551(1); the entire purpose of section 552(f) is to *broaden* the definition set out in section 551(1). *See Meyer*, 981 F.2d at 1298 (Wald, J., dissenting) (current definition of FOIA was intended to expand the APA's definition of an agency); *Energy Research Found.*, 917 F.2d at 584 (same). Second, as discussed above, the substantial independent authority limitation construes the term "Executive Office of the President," which is found in the FOIA definition, not the APA definition.[6]

Second, plaintiffs claim that "Congress knew how to indicate that a subsequent statute should follow both parts of FOIA's definition, but did not include an indication of that sort here." Opp'n at 23. Plaintiffs cite the Privacy Act, which explicitly incorporates the FOIA's definition

---

[6] The above language in *Dong* supports the argument that the D.C. Circuit was interpreting the term "Executive Office of the President," when concluding that EOP units without substantial independent authority did not constitute "agencies." Were the Circuit interpreting section 551(1), it would have had to conclude that an EOP unit that is not an agency neither exercises "substantial independent authority" nor is part of the "Executive Office of the President," which is a nonsensical reading. The best way to give meaning to *Dong*'s construction is to conclude that the term "Executive Office of the President" excludes EOP entities that do not exercise substantial independent authority.

of agency by cross-reference.  *See id.* (citing 5 U.S.C. § 552a).  But Congress is not required to cross-reference language in order for language with a settled construction to be given that same construction in a different context.  *See, e.g.*, *Merrill Lynch*, 547 U.S. at 85-86; *see also United States v. Haynes*, 555 U.S. 415, 424 (2009).  Moreover, this interpretive principle applies even when the language is merely "similar."  *Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364, 370 (2008).  Here, Congress chose language for the Paperwork Reduction Act that had already been given a settled meaning by the Supreme Court.  Its choice of doing so supports the argument that the FOIA and Paperwork Reduction Act provisions should be interpreted consistently.

Third, plaintiffs say that the goals of the Paperwork Reduction Act and the FOIA are significantly different.  Opp'n at 23-24; *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523 (1994) (different statutory purposes can indicate that different interpretations of similarly phrased language ought be construed).  But the D.C. Circuit has already rejected this very argument.  The Privacy Act, for example, has a different purpose than the FOIA, and yet this Circuit has held that the same construction of "agency" applies to both.  *See Alexander v. FBI*, 691 F. Supp. 2d 182, 189 (D.D.C. 2010) (rejecting claim that "the different purposes of FOIA and the Privacy Act counseled against extending case law that had exempted EOP components from FOIA disclosure requirements in light of the statute's plain language.") (citing *Dong v. Smithsonian*, 125 F.3d at 878-79).  Clearly, then, alignment of statutory purpose is not necessary to conclude that the same construction ought apply.

Finally, plaintiffs say that defendants' position would lead to "anomalous practical results," with some collections subject to the Paperwork Reduction Act, and some not, depending on the status of the entity requesting the information.  Opp'n at 24.  But this is no different than the FOIA or the Privacy Act – some governmental entities are subject to the restrictions of those

statutes, and some are not, even if the information possessed or requested by those entities is the same. That is not a "practical absurdity," *id.*; it is the nature of a statutory definitions section. Indeed, if plaintiffs' position were taken to its extreme – that all entities within the Executive Office of the President were subject to the Paperwork Reduction Act – then any time the President (or one of his or her close staff members) asked a written question of ten or more persons, then he or she would have to comply with the procedural requirements of the Paperwork Reduction Act, including disclosing that information publicly and seeking advance OMB approval. *See* 44 U.S.C. § 3502(3). Such an interpretation would come into tension with the President's constitutional power to receive candid advice. *Cf. In re Sealed Case*, 121 F.3d 729, 750 (D.C. Cir. 1997) (discussing importance of candid Presidential advice).

Accordingly, with these objections unavailing, this Court should interpret the Paperwork Reduction Act's definition of "agency" commensurate with that of the FOIA, and hold that the Paperwork Reduction Act does not apply to the Commission.

## III.    MANDAMUS IS UNAVAILABLE TO PLAINTIFFS

As discussed in defendants' opening brief, a writ of mandamus is "a drastic [remedy], to be invoked only in extraordinary situations." *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997). Plaintiffs have not established either that they have "a clear right to relief," or that defendants have "a clear duty to act," *Baptist Med. Ctr. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010), such that their "right to the issuance of the writ is clear and indisputable," *N. States Power Co.*, 128 F.3d at 758.

Plaintiffs have not established that it is "clear and indisputable" that the Paperwork Reduction Act applies to the Commission. As discussed above, the Paperwork Reduction Act shares a materially identical definition to that of the FOIA, and under the binding D.C. Circuit

case law interpreting that definition, the Commission is not an agency for FOIA purposes (a conclusion that plaintiffs pointedly never question).  Indeed, Judge Kollar-Kotelly, in a related case, has already held that the Commission is not an agency under the test applied by those cases.  *See EPIC*, 2017 WL 314907.  Contrary to plaintiffs' claims, this is not irrelevant to the mandamus analysis, *see* Opp'n at 25-27; rather, it informs this Court's view of whether it is clear and indisputable that the Commission is, in fact, an agency.

Plaintiff also cites *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), for the proposition that "a ministerial duty can exist even where the interpretation of the controlling statute is in doubt."  *Id.* at 978 (citation omitted).  But the D.C. Circuit, in more recent decisions, has narrowed the scope of mandamus relief, noting that "[l]egal aporias are the antithesis of the 'clear and indisputable' right needed for mandamus relief."  *In re al-Nashiri*, 791 F.3d 71, 86 (D.C. Cir. 2015).  The Court has gone on to conclude that mandamus could not lie if the "answer was hardly 'clear' *ex ante*," or if there was no "binding precedent" on point.  *Id.* (citations and brackets omitted).  Here, to the extent there is on-point precedent, it is the FOIA case law, interpreting a materially indistinguishable definition of "agency" from that of the Paperwork Reduction Act; and that precedent, of course, would indicate that the Commission is not an agency subject to the Paperwork Reduction Act's requirements.

## IV.   PLAINTIFFS' DERIVATIVE CLAIMS AGAINST OMB FAIL

Plaintiffs' claims that OMB has not complied with its obligations under 44 U.S.C. § 3517(b) should also fail.  *See* MTD at 27-29.  That provision states that "[a]ny person may request the Director to review any collection of information conducted by or for an agency to determine if, under this subchapter, a person shall maintain, provide, or disclose the information to or for the agency."  44 U.S.C. § 3517(b).

First, this provision only applies to a collection of information conducted for or by an agency. *Id.* Plaintiffs and defendants both agree that this question collapses with the antecedent question discussed above. Plaintiffs also say that this provision obligates OMB to provide a response, even if OMB concluded that the Commission was not an agency. Opp'n at 32. But the provision only obligates OMB to respond to a request "to review any collection of information conducted *by or for an agency*." 44 U.S.C. § 3517(b) (emphasis added). OMB is not required to respond to a request to review a collection of information conducted by a non-agency entity. Indeed, such a request could be termed "frivolous" within the meaning of section 3517(b), under which circumstances no response is required. *See, e.g.*, Black's Law Dictionary (10th ed. 2014) (defining "frivolous" as "lacking a legal basis or legal merit").

Moreover, plaintiffs made clear in their supplemental filing that they did not "request the Director [of OMB] to review any collection of information conducted by or for an agency to determine, if, under this subchapter, a person shall, maintain, provide, or disclose the information to or from the agency," as provided in the Act. 44 U.S.C. § 3517(b). Rather, they wrote "to request that [OMB] take appropriate action to remedy sweeping requests by the [Commission] to collect information from state election officials in violation of the Paperwork Reduction Act." Errata, at 136 (July 3, 2017 Letter to OMB), ECF No. 23-1. Even by its own terms, then, plaintiffs' request to OMB did not fall within the ambit of section 3517(b).

Second, section 3517(b) only applies to mandatory collections of information. *See* 44 U.S.C. § 3517(b) (a person may request that OMB review a collection of information to determine if "a person *shall* maintain, provide, or disclose the information to or for the agency") (emphasis added); *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("shall" generally connotes a mandatory duty). Here, it is undisputed that the Commission had

not attempted to compel the information it has requested, and, as discussed above, plaintiffs did not request that OMB review the purported collection for that purpose.  Indeed, plaintiffs ignore the text of section 3517(b) in their opposition, and merely cite a regulation that says that the Paperwork Reduction Act applies to voluntary collections of information.  Opp'n at 32 (citing 5 C.F.R. § 1302.3).  But the scope of the Paperwork Reduction Act's regulations on information collections say nothing about the statutory obligations placed on OMB by section 3517(b), and those obligations only attach to those seeking to determine whether persons are required to comply with information collection requests.

Finally, as stated in defendants' opening brief, plaintiffs cannot compel OMB to "take appropriate remedial action, if necessary," 44 U.S.C. § 3517(b)(2), pursuant to section 706(1) of the APA.  *See* MTD at 28-29.  Section 3517(b)(2) does not define a specific obligation on the part of OMB, nor does it define what action is "appropriate," much less whether it would be "necessary."  In their opposition, plaintiffs recast their argument to say that they are merely seeking a response from OMB, Opp'n at 33, but that is not the relief they seek in their complaint. *See* Compl. Prayer for Relief ¶ 5.  Nor do they otherwise attempt to show how section 3517(b)(2) is sufficiently precise enough to be amenable to relief under section 706(1) of the APA, by, for example, explaining how the court (or OMB) is to determine whether "appropriate remedial action" is "necessary."  This generalized requirement does not impose the "specific, unequivocal command" necessary for a section 706(1) action to lie, *Anglers Conserv. Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016), and, tellingly, plaintiffs never claim that it does.

## **CONCLUSION**

For the aforementioned reasons, and those stated in defendants' opening brief, this Court should grant defendants' motion to dismiss.


Dated:  December 8, 2017

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Joseph E. Borson*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINA A. WOLFE
JOSEPH E. BORSON
(Virginia Bar No. 85519)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1944
Email: joseph.borson@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 8, 2017, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to the parties.

/s/ *Joseph E. Borson*
JOSEPH E. BORSON

25